UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE PEOPLES GAS LIGHT AND COKE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 14 C 2434 |
| v. | ) ) ) | Judge George M. Marovich |
| BEAZER EAST, INC., | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Peoples Gas Light and Coke Company ("Peoples Gas") filed a two-count complaint against defendant Beazer East, Inc. ("Beazer"). In Count I, Peoples Gas seeks to recover response costs under the Comprehensive Environmental Response, Compensation and Liability Act ("CERLCA") § 107(a), 42 U.S.C. § 9607(a). Alternatively, in Count II, Peoples Gas seeks contribution under CERCLA § 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B). Defendant moves to dismiss. For the reasons set forth below, the Court grants in part and denies in part defendant's motion to dismiss.

**I.    Background**

The Court takes as true the allegations in plaintiff's complaint. The Court also considers the documents attached to plaintiff's complaint. Fed.R.Civ.P. 10(c).

Plaintiff Peoples Gas was Chicago's first utility and has been selling gas in Chicago since 1850. It brings CERCLA claims against defendant Beazer, who, in 1988, purchased all of the stock of Koppers. Koppers was a company originally established by Dr. Heinrich Koppers, an

engineer who developed a method for transforming coal into "coke oven gas" that could be used for heating and cooking.

In 1920, Peoples Gas and Koppers entered an agreement (the "1920 Agreement"). Under the 1920 Agreement, Koppers agreed to "organize . . . a corporation empowered by its charter to build and to operate a by-product coke plant and a plant for the manufacture of carbureted water gas." (Complt. Exh. A at ¶ 7). The corporation was to be called Chicago By-Product Coke Company ("Chicago Coke" or "Coke"). Coke, in turn, was to "enter into a contract with 'Koppers,' under the terms of which 'Koppers' will agree to erect and *to operate* for a period of years . . . a Koppers Patented Cross Regeneration Combination Coke and Gas Plant." (Complt. Exh. A at ¶ 9) (emphasis added). To pay for construction, Coke issued $13,000,000 of first mortgage bonds to Koppers and $600,000 of second mortgage bonds. (Complt. Exh. A at ¶¶ 16-17). Peoples Gas agreed to buy all of the gas produced by the plant. (Complt. Exh. A at ¶ 28).

At Coke's inception, all of its stock was to "be delivered to a Trustee nominated by 'Koppers' to be held subject to the provisions of paragraphs 54 to 56 hereof and to such other conditions as shall be necessary for the purpose of assuring to 'Koppers' the payments hereinafter provided to be made to it in paragraphs 54 to 56." (Complt. Exh. A at ¶ 19). Peoples Gas had the option to buy Koppers's rights in the Coke stock when the Coke Plant began operations or at the end of the first year of operation. (Complt. Exh. A at ¶¶ 54, 55). That was not, however, the only way, under the 1920 Agreement, that Peoples Gas could purchase all of Coke. Alternatively, "[i]n the event that 'Peoples Gas' shall not have elected theretofore to pay 'Koppers' in full for the transfer or release of its rights in such stock, "Koppers' rights in such stock shall become vested in 'Peoples Gas at the end of the year of operation of the proposed

plans in which the aggregate of the earnings applied to the reduction of the price shall become equal to the amount of the price fixed to be paid at the beginning of operation of the By-Product Coke Plant." (Complt. Exh. A at ¶ 56). If that had not happened within 25 years after the Coke Plant began operation, then the Trustee was to give the stock to Koppers, who would own it outright. (Complt. Exh. A at ¶ 59).

With respect to "'Koppers [o]bligation to [o]perate" the Coke Plant, the 1920 Agreement states:

> 48. The obligation to be assumed by 'Koppers' with respect to the operation of the proposed By-Product Coke Plant shall be limited to operating or supervising the operation thereof for and in behalf of and in the name of 'Coke,' without liability of any character on the part of 'Koppers,' except as expressly assumed under the terms of this contract, and shall cover the period contemplated by paragraphs 54 to 60 inclusive hereof. 'Koppers' shall assume full responsibility for the efficient operation and for the maintenance of the plant in good working order during the period of operation by 'Koppers,' but the expense of such operation and maintenance or loss incident thereto shall be borne by 'Coke' as hereinafter provided.

(Complt. Exh. A at ¶ 48).

The Coke Plant was built at Crawford Station, which is located at 3500 South Pulaski Road in Chicago. Koppers operated the Coke Plant until 1938, when Peoples Gas purchased the stock of Coke.

Today, the Crawford Station site (the "Crawford Site") is 247 acres, divided into 22 parcels. Some of the land is still owned by Peoples Gas. In recent years, Peoples Gas has worked with the U.S. Environmental Protection Agency and the Illinois Environmental Protection Agency to investigate the Crawford Site. The investigation turned up evidence of contamination, including hazardous substances under CERCLA. The Crawford Site is a facility for purposes of CERCLA.

With respect to the Crawford Site, Peoples Gas entered into three agreements with the EPA. In 2007, Peoples Gas and EPA entered an "Administrative Settlement Agreement and Order on Consent" (the "2007 ASAOC"). (Complt. Exh. D). Among other things, the 2007 ASAOC required Peoples Gas "to conduct an Engineering Evaluation and Cost Analysis ("EE/CA") of alternative response actions . . . to address the environmental concerns in connection with . . . Crawford Station." (Complt. Exh. D at ¶ 2). In 2008, Peoples Gas and EPA entered a second "Administrative Settlement Agreement and Order on Consent" (the "2008 ASAOC"). (Complt. Exh. E). Among other things, the 2008 ASAOC "concern[ed] the preparation and performance of a remedial investigation and feasibility study" at the Crawford Site. (Complt. Exh. E at ¶ 1). In 2011, Peoples Gas and EPA entered a third "Administrative Settlement Agreement and Order on Consent" (the "2011 ASAOC"). (Complt. Exh. F). Among other things, the 2011 ASAOC "provide[d] for the performance of a removal action by [Peoples Gas] and the reimbursement of certain response costs by the United States" in connection with the Crawford Site. (Complt. Exh. F at ¶ 1).

Peoples Gas has already spent more than $70,000,000 in costs associated with the investigation and removal activities at the Crawford Site. It brought suit against Beazer to recoup some or all of those costs. In Count I, Peoples Gas seeks to recover response costs under CERLCA § 107(a), 42 U.S.C. § 9607(a). Alternatively, in Count II, Peoples Gas seeks contribution under CERCLA § 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B). Defendant moves to dismiss.

II.     **Standard on a motion to dismiss**

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic*, 127 S.Ct. at 1964-1965. "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). To survive a motion to dismiss, a claim must be plausible. *Iqbal*, 129 S.Ct. at 1950. Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Bell Atlantic*, 127 S.Ct. at 1974.

## III.    Discussion

CERCLA (sometimes called the Superfund law) "requires that sites contaminated by toxic wastes be cleaned up by or at the expense of the persons responsible for the contamination." *Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 660 (7th Cir. 1995).

CERCLA "grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." *United States v. Bestfoods*, 524 U.S. 51, 55 (1998) (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994)).

### A. Plaintiff's § 107(a) claim

In Count I, plaintiff seeks to recover from defendant response costs pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a). Defendant argues that this claim must be dismissed, because plaintiff is a party that has resolved its liability to the government via settlement and, therefore, has *only* a claim for contribution (its Count II).

> CERCLA § 113(f)(3)(B) states:
>
> A person who has *resolved its liability to the United States* or a State for some or all of a response action or for some or all of the costs of such action in an *administrative* or judicially approved *settlement* may seek contribution from any person who is not a party to a settlement . . .

42 U.S.C. § 9613(f)(3)(B) (emphasis added). When a person has a claim for contribution under § 9613(f)(3)(B), the person cannot pursue a claim for response costs under § 9607(a)(4)(B). *Bernstein v. Bankert*, 733 F.3d 190, 206 (7th Cir. 2013) ("we agree with our sister circuits that a plaintiff is limited to a contribution remedy when one is available."). The parties agree on this basic point. They disagree, however, on whether plaintiff has "resolved its liability" in "an administrative . . . settlement," as it must have done if it is to have a claim for contribution (and, thus, not one for response costs).

The Court agrees with defendant that plaintiff resolved its liability to the United States by administrative settlement. Plaintiff attached to its complaint the three Administrative Settlement Agreements and Orders on Consent that it entered with the EPA. (Complt. Exhs. D, E, F). Each of these explicitly states that it is an administrative settlement agreement resolving plaintiff's

liability as of its effective date. (Complt. Exh. D at ¶ 97) ("The Parties agree that this Settlement Agreement constitutes an administrative settlement for purposes of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9[6]13(f)(3)(B), pursuant to which the Respondent has, as of the Effective Date, resolved its liability to the United States for the Work required under this Settlement Agreement and Past Response Costs and Oversight Costs."); Complt. Exh. E at ¶ 93 ("The Parties further agree that this Settlement Agreement constitutes an administrative settlement for purposes of Section 113(f)(3)(B) of CERCLA, 42. U.S.C. §9[6]13(f)(3)(B), pursuant to which the Respondents have, as of the Effective Date, resolved their liability to the United States for the Work, Past Response Costs, and Future Response Costs."); Complt. Exh. F at ¶ 61(b) ("The Parties agree that this Settlement Agreement constitutes an administrative settlement for purposes of Section 113(f)(3)(B) of CERCLA, 42. U.S.C. § 9613(f)(3)(B), pursuant to which the Respondent has, as of the Effective Date, resolved its liability to the United States for the Work and Future Response Costs."). Furthermore, each ASAOC became effective the date each was signed by the EPA. (Complt. Exh. D at ¶ 108 ("This Settlement Agreement shall be effective upon signature by the Director, Superfund Division , U.S. EPA Region 5."); Complt. Exh. E at ¶ 106 ("This Settlement Agreement shall be effective the day the Settlement Agreement is signed by U.S. EPA's Director of the Superfund Division or his/her delegatee."); Complt. Exh F at ¶ 71 ("This Settlement Agreement shall be effective upon signature by the Director, Superfund Division, U.S. EPA Region 5."). Thus, the 2007 ASAOC became effective June 5, 2007. (Complt. Exh. D at p. 41). The 2008 ASAOC became effective on October 31, 2008. (Complt. Exh. E at 48). The 2011 ASAOC became effective on October 12, 2011. (Complt. Exh. F at 25). Based on the plain language of each ASAOC, the Court

agrees with defendant that plaintiff has resolved its liability to the United States by administrative settlement and, accordingly, can pursue a claim for contribution under CERCLA §113 but not a claim for response costs under CERCLA § 107. *See Hobart Corp. v. Waste Mgt. of Ohio, Inc.*, __ F.3d __, __, 2014 WL 3397147 at * (6th Cir. July 14, 2014) (concluding that party had contribution claim but not claim for response costs where its agreement with the EPA stated, "The Parties agree that this Settlement Agreement constitutes an administrative settlement for purposes of Section 113(f)(3)(B) of CERCLA . . . pursuant to which [parties] have, as of the Effective Date, resolved their liability to the United States . . .").

Plaintiff argues that the ASAOCs at issue in this case have characteristics similar to the agreements the Seventh Circuit, in *Bernstein*, found not to be administrative settlements resolving liability. Despite such similarities to the agreement in *Bernstein*, the Court cannot agree with plaintiff that the ASAOCs are anything other than settlement agreements that resolved its liability to the United States. Unlike in the agreements at issue in *Bernstein*, in the agreements at issue here, Peoples Gas explicitly agreed, when it signed the ASAOCs, that each was, in fact, a § 113(f)(3)(B) settlement agreement by which Peoples Gas resolved its liability to the United States. (Complt. Exh D. at ¶ 97; Complt. Exh. E at ¶ 93; Complt. Exh. F at ¶ 62(b)). Nothing in *Bernstein* suggests that the Court should ignore such an explicit agreement. To the contrary, the Seventh Circuit said the question of whether an agreement resolves liability "requires a look at the terms of the settlement on a case-by-case basis. The parties to a settlement may choose to structure their contract so that liability is resolved immediately upon execution of the contract." *Bernstein*, 733 F.3d at 213-214. That is precisely what Peoples Gas

did in this case, and Peoples Gas cannot escape the plain language of its ASAOCs. Plaintiff has a claim for contribution only.

Because Peoples Gas can pursue only a contribution claim, Count I is dismissed with prejudice.

### B. Plaintiff's contribution claim

In Count II, plaintiff brings its claim for contribution. Defendant argues that part of this claim should be dismissed, because it is barred by the statute of limitations. A statute of limitations is an affirmative defense, and the plaintiff need not plead around it. *United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). Still, a plaintiff "may plead himself out of court by alleging (and thus admitting) the ingredients of a defense." *Id.*

CERCLA includes a statute of limitations for contribution claims, and this is what it says:

> No action for contribution for any response costs or damages may be commenced more than 3 years after--
>
> (A) the date of judgment in any action under this chapter for recovery of such costs or damages, or
>
> (B) the date of an administrative order under section 9622(g) of this title (relating to de minimis settlements) or 9622(h) of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.

42 U.S.C. § 9613(g)(3)(A)&(B). The parties debate whether this limitations period applies to plaintiff's contribution claim. Plaintiff argues that the ASAOCs it entered with the EPA do not fall into any of the categories mentioned in § 9613(g)(3)(B), and, therefore, no statute of limitations applies. Defendant, on the other hand, argues that the ASAOCs are administrative orders under § 9622(h) and that, therefore, the three-year limitations period applies.

Alternatively, defendant argues that the three-year period applies even if the ASAOCs are not administrative orders under § 9622(h).

The Court agrees with defendant. First, each ASAOC falls within one of the categories listed in §9613(g)(3)(B). Specifically, each is an "administrative order under . . . 9622(h) of this title (relating to cost recovery settlements)." Each ASAOC is entitled "ADMINISTRATIVE SETTLEMENT AND ORDER ON CONSENT," which is to say it was considered by the parties to be both an administrative settlement and an administrative order on consent. Each ASAOC says it was entered under the authority of CERCLA § 9622. (Complt. Exhs. D at ¶1; E at ¶ 2; F at ¶ 2). Each includes a settlement for the recovery of response costs. (Complt. Exhs. D at ¶¶ 63-64; E at ¶¶ 75-76; F at ¶ 36). Thus, each is an administrative order under § 9622(h), and the three-year statute of limitations in § 9613(g)(3) applies.

Second, even if the ASAOCs were not administrative orders under §9622(h), that would not mean Peoples Gas's claim for contribution is subject to no limitations period. The Seventh Circuit has not decided what the appropriate statute of limitations would be in the event the limitations period of §9613(g)(3) were not triggered. The Sixth Circuit Court of Appeals (whose reasoning this Court finds persuasive and therefore adopts), however, has held that the appropriate limitations period to adopt in that circumstance is § 9613(g)(3), because it is the most analogous. *Hobart Corp. v. Waste Mgt. of Ohio, Inc.*, __ F.3d __, __, 2014 WL 3397147 at *14 (6th Cir. July 14, 2014) ("It is well known that Congress frequently leaves a void in federal statutory law related to limitations periods, and when that happens, the Supreme Court 'do[es] not ordinarily assume that Congress intended that there be no time limit on actions at all."

Instead, the Court 'borrows the most suitable statute or other rule of timeliness from some other source.'") (internal citations omitted).

Thus, the statute of limitations for Peoples Gas's contribution claim is three years from the effective date of each ASAOC. Peoples Gas has alleged (by attaching those ASAOCs to its complaint) that the 2007 ASAOC became effective on June 5, 2007 (Complt. Exh. D at ¶ 108 & p. 41) and that 2008 ASAOC became effective on October 31, 2008 (Complt. Exh. E. at ¶ 106 & p. 48). Because those ASAOCs were entered more than three years before Peoples Gas filed suit, the portions of plaintiff's contribution claim that are based on the 2007 ASAOC and the 2008 ASAOC are time-barred. The effective date of the 2011 ASAOC was October 12, 2011. (Complt. Exh. F at ¶ 71 & p. 25). The portion of plaintiff's contribution claim arising out of the 2011 ASAOC is timely.

The portions of Peoples Gas's contribution claim arising out the 2007 ASAOC and the 2008 ASAOC are dismissed with prejudice.

**B.     The 1920 Agreement**

Finally, defendant argues that any liability it could have to Peoples Gas under CERCLA is barred by the terms of the 1920 Agreement.

The parties agree that an assignment of liability signed before CERCLA was passed can apply to CERCLA claims. *Kerr-McGee Chem. Corp. v. Lefton Iron & Metal Co.*, 14 F.3d 321, 327 (7th Cir. 1994) ("That the indemnity provision was agreed to prior to CERCLA's enactment should not, however, have affected the district court's reading of the agreement. A party may indemnify another party for liability arising out of a law not in existence at the time of contracting."). The parties disagree, however, on whether the language at issue in this case

covers the contribution claim at issue here. The Court's "primary objective in construing a contract is to give effect to the intent of the parties." *Gallagher v. Lenart*, 226 Ill.2d 208, 232 (Ill. S.Ct. 2007). Unless a contract is ambiguous (in which case a court may consider extrinsic evidence), a court must look to the language of the contract and its plain and ordinary meaning as the best indication of the parties' intent. *Id.*

The Court will consider the plain language of the 1920 Agreement to determine whether the parties agreed that defendant will not be liable for plaintiff's remaining CERCLA claim. Plaintiff's claim is one for contribution under § 9613(f), which allows a person to seek contribution "from any other person who is liable or potentially liable under section 9607(a) of this title . . ." 42 U.S.C. § 9613(f)(1). Persons liable under §9607(a) include "any person who at the time of disposal of any hazardous substance *owned* or *operated* any facility at which such hazardous substances were disposed." 42 U.S.C. § 9607(a) (emphasis added). Plaintiff has alleged that Koppers was an "owner or operator" of the Crawford Site when hazardous substances were released and is, therefore, liable to People Gas for contribution. (Complt. ¶ 73). CERCLA defines "owner" and "operator" circularly, so courts apply the plain meaning to the terms. *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 419 n.1 (7th Cir. 1994) ("The circularity implies, however, that the statutory terms have their ordinary meanings rather than unusual or technical meanings."). As the Supreme Court has explained, the plain meaning of operator under CERCLA is one who "manage[s], direct[s], or conduct[s] operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." *Bestfoods*, 524 U.S. at 66-67.

The Court now turns to the language of the 1920 Agreement. The language on which defendant relies is found in ¶ 48, which states:

> 48. The obligation to be assumed by 'Koppers' with respect to the operation of the proposed By-Product Coke Plant shall be limited to operating or supervising the operation thereof *for and in behalf of and in the name of 'Coke,' without liability of any character on the part of 'Koppers,'* except as expressly assumed under the terms of this contract, and shall cover the period contemplated by paragraphs 54 to 60 inclusive hereof. 'Koppers' shall assume full responsibility for the efficient operation and for the maintenance of the plant in good working order during the period of operation by 'Koppers,' but *the expense of such operation* and maintenance *or loss incident thereto shall be borne by 'Coke'* as hereinafter provided.

(Complt. Exh. A at ¶ 48) (emphasis added). This language explicitly states that Koppers will operate the Coke Plant only "in behalf of and in the name of 'Coke.'" Thus, the parties to the 1920 Agreement agreed that Koppers would be operating the Coke Plant, but it would be doing so as Coke, the new corporation. The language also explicitly says that Koppers is operating the Coke Plant, "without liability of any character on the part of 'Koppers,'' except as expressly assumed under the terms of this contract." The paragraph goes on to say that the "expense of such operation . . . or loss incident thereto shall be borne by 'Coke.'" Thus, Peoples Gas and Koppers explicitly agreed that all liability and losses from the operation of the Coke Plant were to be borne by Coke, not Koppers. The Court concludes that this language is broad enough to cover all liability arising from the operation of the Coke Plant, including operator liability under CERCLA. Accordingly, the Court agrees with defendant that the 1920 Agreement bars plaintiff's contribution claim based on operator liability. Plaintiff's claim against Beazer for contribution based on Koppers's alleged status as an operator is dismissed with prejudice.

The Court does not agree, however, that the language of the 1920 Agreement bars plaintiff's claim for contribution to the extent is it based on Koppers's alleged status as an owner

-13-

of the CERCLA facility. The language defendant relies on places with Coke the liability for Koppers's *operation* of the Coke Plant, but it says nothing about any liability Koppers may have as an owner of the site. Accordingly, the Court does not agree that the 1920 Agreement bars plaintiff's claim against Beazer for contribution based on the allegations that Koppers was an owner of the CERCLA facility. The Court denies defendant's motion to dismiss as to plaintiff's claim for contribution against defendant as an owner.

## IV. Conclusion

For the reasons set forth above, the Court grants in part and denies in part defendant's motion to dismiss. Count I is dismissed with prejudice. The portions of Count II based on the 2007 ASAOC and the 2008 ASAOC are dismissed with prejudice. The portion of Count II that seeks to hold defendant liable for contribution based on Koppers's alleged status as an operator is dismissed with prejudice.

This case is set for status on September 22, 2014 at 11:00 a.m.

ENTER:

*[signature: George M. Marovich]*

George M. Marovich
United States District Judge

DATED: September 8, 2014